Not for Publication

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARILYN BRELAND,

                Plaintiff,

v.                                            Case No. 6:13-cv-1719-Orl-31KRS

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

       This cause came on for consideration without oral argument on the complaint filed by

Plaintiff Marilyn Breland seeking review of the final decision of the Commissioner of Social

Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy

of the record before the Social Security Administration ("SSA"), Doc. Nos. 13, 14, and the

parties' Joint Memorandum,[1] Doc. No. 22.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement
of the pertinent facts in the record.   Doc. No. 15.   Counsel for Plaintiff was ordered to identify and frame,
in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel
for the Commissioner was required to respond to each of those issues in the format set forth in the Revised
Scheduling Order.   *Id.* at 4.

Not for Publication

## PROCEDURAL HISTORY.

In 2010, Breland filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.* (sometimes referred to herein as the "Act").   She alleged that she became disabled on September 29, 2010.   R. 100.

After her application was denied initially and on reconsideration, Breland asked for a hearing before an Administrative Law Judge ("ALJ").   R. 62.   An ALJ held a hearing on March 27, 2012.   Breland, accompanied by a representative, and a vocational expert ("VE") testified at the hearing.   R. 30-49.

After considering the hearing testimony and the evidence in the record, the ALJ found that Breland was insured under OASDI through December 31, 2015.   The ALJ concluded that Breland had not engaged in substantial gainful activity since the alleged disability onset date. R. 18.

The ALJ found that Breland had the following severe impairments: degenerative joint disease of the bilateral knees; degenerative disc disease of the cervical, thoracic and lumbar spine; left shoulder impingement; status-post arthroscopic decompression; and, obesity.   *Id.*   These impairments, individually and in combination, did not meet or equal a listed impairment.   R. 18-19.

The ALJ found that Breland had the residual functional capacity to do a limited range of light work, as follows:

> She can lift and carry 20 pounds occasionally, 10 pounds frequently,
> stand or walk for two hours in an eight-hour workday, and sit for six
> hours of an eight-hour workday, one hour at a time before requiring
> the opportunity to alternate to standing or walking for approximately
> ten minutes, while on task.   Further, she can stoop, kneel, crouch,
> and climb stairs occasionally, as well as occasionally perform over-

2

> head work with the left upper extremity.   However, she requires the
> use of [a] cane for prolonged ambulation and cannot crawl or climb
> ladders, ropes, or scaffolds.

R. 19.   In making this finding, the ALJ gave significant weight to a portion of the opinion of

Geeta Narula, M.D., an examining physician, but the ALJ did not adopt other portions of Dr.

Narula's opinion.   R. 21.   The ALJ gave significant weight to the opinion of Olga M. Garcia,

M.D., a reviewing physician who affirmed a physical functional capacity assessment prepared by

a single decisionmaker.   *Id.*

The ALJ determined that Breland could not return to her past relevant work.   R. 22.

After considering the testimony of the VE, the ALJ found that there were sedentary jobs available

in the national economy that Breland could perform, specifically addresser, food and beverage

order clerk and microfilm and document preparer.   R. 23.   Therefore, the ALJ concluded that

Breland was not disabled.   *Id.*

Breland sought review of the ALJ's decision by the Appeals Council.   R. 11.   On

September 16, 2013, the Appeals Council found no reason to review the ALJ's decision.   R. 390.

Breland now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Breland having exhausted her administrative remedies, the Court has jurisdiction to

review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   A court's review of a

final decision by the SSA is limited to determining whether the ALJ's factual findings are

supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per

curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698,

701 (11th Cir. 1988).

Not for Publication

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' Joint Memorandum, which statement of facts I incorporate by reference.   Accordingly, I will only summarize facts pertinent to the issues raised to protect Breland's privacy to the extent possible.

Breland was born in 1963.   She graduated from high school and became a certified nurse's aide.   R. 34.   She stopped working in 2010 due to osteoarthritis that caused her legs to hurt and made it difficult for her to sit, stand or walk for long periods.   R. 34-35.

At the ALJ's hearing, Breland also complained of back pain, which had become progressively worse over time.   She also had stiffness that sometimes resulted in her knees buckling if she stood for too long.   R. 35, 39.   She had previously had surgery on her left knee and on her shoulder in 2010.   She had fatigue in her shoulder with overhead work, such as blow drying her hair.   Her knee hurt constantly.   R. 36.   She also collected fluid in her knees and ankles.   R. 38.   Humidity and cold exacerbated her pain.   R. 40.

Breland estimated that she could walk 2 blocks before needing to stop and sit down for 20 to 30 minutes.   R. 38.   After that time, she either needed to stand or to elevate her legs.   R. 39. She could not lift more than 15 pounds.   R. 38.   She could not climb stairs.   R. 41.

During a typical day, Breland cooked and performed household chores with the help of her husband and her daughter.   R. 37.   She would need to rest her back about every 25 to 30 minutes.   R. 39-40.   She went with her husband to doctor's appointments and to the grocery store.   R. 37.   She attended church twice a week.   During services, she could alternate sitting and standing and sit with her legs elevated if they became too swollen.   R. 37-38.

4

Not for Publication

Medical records show that Breland was involved in a motor vehicle collision on February 2, 2009.   Thereafter, she had left shoulder pain, difficulty raising her left arm and left-sided neck pain.   In 2010, Robert S. Roberts, M.D., determined through an MRI that Breland had rotator cuff impingement and tendinopathy in her shoulder region.   A cervical MRI showed central disc protrusion at C2-3, C5-6 and C6-7, with minimal evidence of significant protrusion.   R. 258. Dr. Roberts performed arthroscopic surgery on her left shoulder on December 9, 2010.   R. 253-54.

Medical records also confirm that Breland had surgery on her left knee to repair the medial and lateral menisci with debridement of degenerative osteoarthritis.   R. 205.   Rory A. Evans, M.D., opined that Breland reached maximum medical improvement ("MMI") on September 22, 2009, with a 4% permanent impairment rating to the whole body.   He released Breland to normal routine activities at home and at work.   R. 203.   A physical therapy note dated February 23, 2011, reflects that Breland had increased range of motion and strength in her shoulder, but she still fatigued quickly with overhead activity.   R. 349.

On November 12, 2010, Breland prepared a Supplemental Pain Questionnaire for the SSA.   She wrote that she had pain in both knees and left-sided pain radiating to her hip. Bending her knees was almost impossible.   She could stand and walk only for short periods of time.   R. 135.   She used over-the-counter pain medication and heating pads.   She used a stool when cooking, and she performed only light housekeeping like dusting.   She also sat to sort laundry.   She used a scooter in a store to shop.   R. 136.   She did limited driving.   R. 137 (Exhibit 4E).

Not for Publication

On December 10, 2010, Bradley Gilliland, a single decisionmaker, prepared a physical functional capacities assessment.   Mr. Gilliland opined that Breland could lift 20 pounds occasionally and 10 pounds frequently.   She could sit, stand or walk about 6 hours in an 8-hour workday.   He found no other functional limitations.   R. 227-34.   On March 11, 2011, Dr. Garcia reviewed the medical evidence of record and affirmed Mr. Gilliland's assessment.   R. 237.

In March 2011, Breland sought treatment at Central Florida Family Health Center, Inc. due to pain in both knees that had gotten progressively worse for the previous 2 years.   She reported that she had gained 20 pounds in 3 months because she had not been able to move as much due to pain.   R. 359.   Karenna Senors, M.D., prescribed Naprosyn.   R. 363.   An X-ray taken on March 9, 2011, revealed mild degenerative arthrosis in Breland's right knee with large joint effusion.   R. 376.   An X-ray of the left knee taken at the same time also showed mild degenerative arthrosis without joint effusion.   R. 375.   Dr. Senors subsequently prescribed Ultram for pain.   R. 365.[2]

On May 10, 2011, Breland had an MRI of the lumbar spine.   The MRI revealed herniations at L4-5, L5-S1, T12-L1, with the herniation at T12-L1 being described as "clearly chronic" with "well-developed enveloping osteophytes."   R. 262.

Dr. Narula, a board-certified physical medicine and rehabilitation physician, examined Breland at the request of the Office of Disability Determination.   Breland complained of low back pain radiating to her left leg and pain and swelling in both knees.   Dr. Narula noted that Breland was 5'6" tall and weighed 280 pounds.   Upon examination, Dr. Narula found limitation

---

[2] Ultram, also known as tramadol, is a narcotic-like pain reliever used to treat moderate to severe pain.  *Ultram*, Drugs.com, http://www.drugs.com/ultram.html (last visited Dec. 3, 2014).

Not for Publication

in range of motion of the lumbar spine due to pain. A straight-leg raising test was positive on the left, and Dr. Narula observed decreased sensation in the left leg in the L5 distribution. Both knees had limited range of motion, mild swelling and crepitus. Breland walked with an antalgic, wide-based gait without an assistive device. R. 378. Range of motion in the upper extremities was normal. R. 379. Dr. Narula's impression included degenerative arthritis in both knees with chronic pain, and back pain secondary to herniated lumbar discs and a chronic thoracic herniated disc. Dr. Narula opined that Breland had a limited ability to do manual work or prolonged standing, lifting or carrying due to back and knee pain. *Id.*

Dr. Narula prepared a Medical Source Statement of Ability to Do Work-Related Activities (Physical). She opined that Breland could lift up to 20 pounds and carry up to 10 pounds occasionally. R. 384. Breland could sit 2 hours at a time, for a total of 8 hours in a work day. She could stand 30 minutes and walk 30 minutes, for a total of 2 hours of each activity during a work day. Dr. Narula noted that Breland did not need a cane to walk but that a cane might help. R. 385. Breland could only occasionally push/pull with her right or left hand. She could occasionally operate foot controls due to knee pain/swelling and back discomfort and tenderness. R. 386. She could occasionally climb stairs and ramps and stoop but never engage in other postural activities. R. 387. Breland could not walk a block at a reasonable pace on rough or uneven surfaces due to a slow gait, and she could not climb a few steps at a reasonable pace with the use of a single hand rail due to a very slow pace. R. 389. Dr. Narula opined that these limitations were first present in 2010. She also noted that Breland's knees would probably continue to worsen. *Id.*

7

Not for Publication

During the hearing, the ALJ asked the VE to assume a hypothetical person of Breland's age, education and work experience who could do the following:

> [The] individual is limited to a range of light work as described in the regulations. That would be lifting/carrying up to 20 pounds occasionally and 10 pounds frequently. Standing/walking/sitting six hours in an eight-hour workday. No climbing ladders, ropes or scaffolds or crawling. Occasional stooping, kneeling, crouching, climbing stairs, and overhead work with the left upper extremity.

R. 45. The VE testified that this person could not perform Breland's past relevant work. *Id.*

The ALJ added the additional limitation that the individual "could only stand/walk for four hours in that eight-hour workday for one hour at a time before need[ing] to alternate to a sit[ting] position for 10 minutes while on task . . . ." R. 46. The VE opined that this person could perform the unskilled, sedentary jobs of addresser, maintenance service dispatcher, food and beverage order clerk/room service order clerk, and microfilming document preparer, each of which was available in the national economy. R. 46-47. If the individual had the additional limitation of sitting for 1 hour at a time before needing to alternate to a standing/walking position for 5 minutes and required the use of a cane for prolonged ambulation, the VE testified that the person could still perform these jobs. However, if the individual had to elevate her legs for at least 20 minutes each hour or be away from the workstation for 20 minutes each hour, the person could not perform these jobs. R. 47-48.

## ANALYSIS.

Breland raises two intertwined assignments of error. She contends that the ALJ did not state good cause for rejecting some of the functional limitations identified by Dr. Narula. She

Not for Publication

also asserts that the ALJ did not properly assess the limitations arising from pain and other subjective symptoms.[3]  Because these issues are interrelated, I will address them together.

The ALJ accepted Dr. Narula's opinion that Breland could not perform prolonged standing, lifting, or carrying due to back and bilateral knee limitations.   The ALJ did not accept the rest of the limitations identified by Dr. Narula, instead giving substantial weight to the opinion of Dr. Garcia, a physician who reviewed Breland's record in March 2011 and adopted a functional capacity assessment originally prepared by a single decisionmaker.   Breland argues that the ALJ erred by failing to state adequate reasons for rejecting a large part of Dr. Narula's functional capacity assessment.   Breland's argument about the ALJ's treatment of Dr. Narula's opinion is intertwined with her argument that the ALJ did not properly evaluate the limitations arising from pain and other subjective symptoms.[4]

> Pursuant to the regulations, the weight an ALJ must give medical opinions varies according to the relationship between the medical professional and the claimant.    "The opinions of examining physicians are generally given more weight than non-examining physicians, . . . and specialists on issues within their areas of expertise receive more weight than non-specialists."

*Gumbs v. Colvin*, No. 3:12-cv-275-J-TEM, 2013 WL 5490285, at *4 (M.D. Fla. Sept. 20, 2013)

(citing 20 C.F.R. § 404.1527(c) and SSR 96-6p and quoting *Preston v. Astrue*, No. 2:09-cv-485-

---

[3] In the first assignment of error, counsel for Breland makes passing reference to the failure of the ALJ to ask the VE a hypothetical question that exactly matched the ALJ's RFC assessment.   Because this assignment of error was not set forth in a separate subheading, as required by the scheduling order, Doc. No. 15 at 4, it has not been preserved as an issue independent of the treatment of Dr. Narula's opinion and application of the pain standard.

[4] This circuit uses a pain standard that "requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).   "The standard also applies to complaints of subjective conditions other than pain." *Id.*

Not for Publication

SRW, 2010 WL 2465530, at *6 (M.D. Ala. June 15, 2010)).   In this case, Dr. Narula was both an

examining physician and a specialist in physical medicine and rehabilitation.   Dr. Garcia is a

non-examining physician whose area of specialization is not reflected in the record.

The reasons the ALJ gave for rejecting much of Dr. Narula's functional capacity

assessment were as follows:

> The [ALJ] does not adopt [Dr. Narula's] opinion for more frequent
> change of position, the preclusion from multiple postural activities,
> or an unreasonably slow pace in walking on uneven surfaces or
> climbing stairs, as these are not supported by the conservative
> treatment record, the imaging reports and the claimant's reported
> activities, including cooking, cleaning, driving, running errands,
> shopping, going to appointments and attending church regularly
> (Exhibit 4E).  [Dr. Narula] also opined that [Breland] could shop,
> travel without a companion, and use public transportation (Exhibit
> 19F).

R. 21.   As noted above, Exhibit 4E is a Supplemental Pain Questionnaire prepared by Breland in

November 2010.   This questionnaire does not support the ALJ's conclusions.   Rather, in that

document Breland wrote that she could only perform light housekeeping, she cooked using a stool

rather than standing, she did only limited driving and she used a scooter for shopping.   Dr.

Narula's check marks on a form did not address the frequency with which Breland could shop,

travel without a companion, and use public transportation or whether she would need

accommodations for these activities, such as use of a scooter when shopping.

Further, as Breland's counsel correctly argues, it is not clear what imaging reports the ALJ

relied on to support her opinion.   Notably, an MRI of the lumbar spine taken in 2011 revealed

herniations at L4-5, L5-S1, T12-L1, with the herniation at T12-L1 being described as "clearly

chronic" with "well-developed enveloping osteophytes."   R. 262.   The ALJ also did not indicate

why she concluded that shoulder surgery after the alleged disability onset date and treatment with

10

Not for Publication

a pain medication for moderate to severe pain was conservative.   Additionally, the record reflects that Breland's treatment options were limited, in that she was treated at a Department of Health clinic because she had no insurance.   R. 378.

Section 404.1527(c) of the Social Security regulations establishes a framework for determining the weight afforded each medical opinion.   As discussed above, under this framework, the ALJ generally must give more weight to the opinion of an examining physician than to the opinion of a non-examining physician, and more weight to the opinion of the specialist in his or her area of expertise than to a physician who is not a specialist.   While there are circumstances in which this hierarchy can be overcome, I recommend that the Court find that this is not such a case.

Dr. Narula is a specialist in physical medicine and rehabilitation, which is a medical specialty concerned with diagnosis and treatment of patients with painful or functionally limiting conditions.   *Definition of Physical Medicine and Rehabilitation*, Am. Bd. of Physical Medicine and Rehabilitation, https://www.abpmr.org/consumers/pmr_definition.html (last visited Dec. 3, 2014).   As such, her opinion regarding Breland's functional limitations was an opinion "about medical issues related to . . . her area of specialty . . . ."   20 C.F.R. § 404.1527(c)(5).   She is the only physician of record who had the opportunity to evaluate all of Breland's imaging tests and other medical records as well as examining Breland.   Dr. Garcia, whose opinion the ALJ favored over much of Dr. Narula's opinion, is not shown to be a specialist in the record, did not examine Breland, and rendered her opinion in March 2011, without being able to evaluate later medical records or the imaging studies performed in May 2011.

11

Not for Publication

The ALJ has not stated adequate reasons, supported by the record, for rejecting the hierarchy of weight to be given to physicians' opinions as set forth in § 404.1527(c).   Therefore, I recommend that the Court reverse the final decision of the Commissioner and remand this case for further proceedings.

*Remand for Further Proceedings or an Award of Benefits.*

Breland asks that the Court remand the case and direct the Commissioner to award her disability benefits.   Remand for an award of benefits is appropriate only when "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."   *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).   Because the Commissioner has not yet properly considered the opinion of Dr. Narula, it is not clear that the evidence in the record establishes disability without any doubt. Therefore, I recommend that the Court remand the case for further proceedings.

**RECOMMENDATION.**

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be  **REVERSED** and that the case be **REMANDED** for further proceedings.   I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved

Not for Publication

party from attacking the factual findings on appeal.

Respectfully recommended this 4th day of December 2014.

_Karla R. Spaulding_

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record

13